UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED VAN LINES, LLC,

                      Plaintiff,              **MEMORANDUM AND ORDER**
                                                                   CV 07-5013 (DRH) (ARL)
        -against-

CRYE-LEIKE, INC. RICKY PINEDA,
KATRINA SMITH, NATHAN MERRILL,
MICHAEL SUROWIEC, HENRY LI, SALLY
HAMILTON, AND DOUGLAS ADAIR,

                      Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**For the Plaintiff:**
**GEORGE W. WRIGHT & ASSOCIATES, LLC**
Wall Street Plaza
88 Pine Street, 7th Floor
New York, NY 10005-1801
By:   George W. Wright, Esq.
        Lee W. Chang, Esq.

**For the Defendant:**
**DOUGLAS ADAIR, PRO SE**
49 Sandy Hill Raod
Oyster Bay, NY 11771

**HURLEY, Senior District Judge:**

       United Van Lines ("United Van" or "United") commenced this action against defendant Douglas Adair ("Adair") pursuant to the ICC Termination Act of 1995 ("ICCTA"), 49 U.S.C. §§ 13701, 13702, 13704, 13706, and 14705, governing the "collection of interstate transportation charges for a shipment moving in interstate commerce." (Compl. ¶ 1.) Presently before the Court is plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 seeking judgment awarding United Van $9,394.09 in unpaid tariff charges "with

respect to its interstate transportation services provided" to Adair. (Pl.'s Mem. in Supp. of Summ. J. ("Pl.'s Mem. in Supp.") at 4-5.) For the reasons stated below, the plaintiff's motion is granted.

## *PRELIMINARY MATTERS*

United Van satisfied its obligations under Local Rule 56.1 by submitting "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," together with "citation to evidence which would be admissible, set forth as required by Fed. R .Civ. P. 56(c)." *See* Local R. 56.1(a), (d). In response, defendant Adair was required to provide "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party" followed by citations to admissible record evidence. *See* Local R. 56.1(b), (d). Notwithstanding this obligation, defendant did not comply.

Local Rule 56.1 instructs that where a paragraph is not specifically controverted by the opposing party it "will be deemed to be admitted for purposes of the motion." Local R. 56.1(c); *see also Giannullo v. City of New York,* 322 F.3d 139, 140 (2d Cir.2003) ("If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."). However, "[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 74 (2d Cir.2001).

While acknowledging that it has discretion "to overlook a party's failure to comply with local court rules," *id.* at 73, the Court declines to overlook Adair's failure to submit a response to United Van's Rule 56.1 Statement. Although Adair is appearing *pro se* at this juncture, United

Van provided him with the required notice to *pro se* litigants opposing motions for summary judgment pursuant to Local Rule 56.2. (*See* Docket No. 67-2.) The notice warned Adair that the case could be dismissed without a trial if he did not file "sworn affidavits and other papers as required by Rule 56(e) of the Federal Rules of Civil Procedure and by Local Civil Rule 56.1." (*Id.*) Adair's *pro se* status is therefore not a basis to overlook this District's Local Rules. *See, e.g., Wali v. One Source Co.,* 678 F.Supp.2d 170, 178 (S.D.N.Y.2009) (finding that if proper notice is sent under Local Rule 56.2, "[*p*]*ro se* litigants are then not excused from meeting the requirements of Local Rule 56.1"). Moreover, although Adair contests certain facts in his opposition papers, he does not properly support these assertions with citation to material in the record in accordance with Rule 56(c)(1). Accordingly, all material facts set forth in plaintiff's Rule 56.1 Statement are deemed admitted to the extent that they are adequately supported with record evidence.

Having now addressed the above threshold issues, attention will be directed to the material facts which serve as the basis for plaintiff's motion for summary judgment.

## *BACKGROUND*

Plaintiff, United Van, is "an interstate motor carrier of household goods." (Pl.'s R. 56.1 Stmt. ¶ 1.) Crye-Leike Relocation ("Crye-Leike"), a division of Crye-Leike, Inc., "provides relocation services to its individual and corporate clients," including assisting clients "by helping their transferees schedule, coordinate and communicate with the moving companies." (*Id.* ¶ 3.) "On or about October 1, 2003, Crye-Leike and United entered into a Transportation Services Agreement," incorporating by reference United's Household Goods Tariffs STB HGB 400-N and 104-G. (*Id*. ¶¶ 4-5.)

"On January 2, 2006, Crye-Leike Relocation forwarded a letter to defendant Adair's employer, American Home Mortgage Corp. ("AHM"), confirming AHM's selection of Crye-Leike Relocation as a relocation service provider for AHM's transferring employees." (*Id*. ¶ 6.) "On June 27, 2006, AHM faxed Crye-Leike Relocation a 'Relocation Authorization' on behalf of . . . Adair requesting interstate household goods moving services for Adair." (*Id*. ¶ 7.) AHM e-mailed to Crye-Lieke "a further authorization concerning Adair's request for transportation of his household goods" on or about July 11, 2007. (*Id*. ¶ 8.) "After receiving AHM's Relocation Authorizations for Adair, Crye-Leike Relocation complied with AHM's instructions by booking the requested interstate move for Adair with United." (*Id*. ¶ 9.)

"In accordance with Crye-Leike Relocation's Transportation Services Agreement . . . with United, Crye-Leike Relocation entered into a Bill of Lading contract [dated July 26, 2007] ("the Bill of Lading") with United for the interstate transportation of Adair's household goods." (*Id*. ¶¶ 10, 11.) Pursuant to this agreement, United Van transported Adair's household goods from Arlington, Virginia to Oyster Bay, New York. (*Id*. ¶ 11.)

The Bill of Lading contains various provisions relating to defendant. The Bill of Lading designated Adair as the "Shipper" and "Consignee." (*Id*. ¶ 11.) The front also provides that the "shipper agrees that this carrier shall transport the goods and effects tendered by the shipper." (*Id*. ¶ 16.) In addition, the front of the Bill of Lading provides that "[i]f credit is extended by the carrier by agreeing to bill an employer or other party, and in the event that any or all of the charges are not paid, the owner of the goods and/or beneficiary of the services acknowledges he remains primarily liable for payment." (*Id*.) The "Contract Terms and Conditions" on the back of the Bill of Lading provides, *inter alia*, that "[t]he applicable tariff provisions" published by

4

the carrier "are incorporated herein by reference." (*Id*. ¶ 17.) "Section 3" of the "Contract Terms and Conditions" also provides:

> [t]he shipper . . . and consignor upon tender of the shipment to carrier, and the consignee, upon acceptance of delivery of shipment from carrier, shall be liable, jointly and severally, for all unpaid charges payable on account of a shipment in accordance with applicable tariffs . . . . The extension of credit to either shipper or consignee for such unpaid charges shall not thereby discharge the obligation of the other party to pay such charges in the event the party to whom credit has been extended shall fail to pay such charges.

(*Id*.) The Bill of Lading "and the signatures thereon indicate that the United driver delivered the subject household goods shipment on August 2, 2007 to Adair who acknowledged the delivery by countersigning the Bill of Lading." (*Id*. ¶ 18.)

"On or about August 6, 2007," United Van sent Crye-Leike an invoice dated August 6, 2007 ("the invoice") in the amount of $9,394.09 "covering interstate transportation and other charges related to the Adair shipment." (*Id*. ¶ 12.) "In accordance with Crye-Leike Relocation's agreement with AHM, Crye-Leike Relocation forwarded [the invoice] to AHM for its direct payment to United." (*Id*. ¶ 14.) "AHM subsequently filed in bankruptcy and failed to pay" United Van the amount stated in the invoice. (*Id*. ¶ 15.)

Plaintiff claims that "it is undisputed that, at the request of Crye-Lieke and defendant Adair's employer, AHM, United provided interstate transportation services to Adair which he accepted and for which United's unpaid tariff charges total $9,394.09," and that "United should be granted summary judgment against Adair." (Pl.'s Mem. in Supp. at 5.) Adair contends that he is not liable because he "did [not] have any choice in the selection of the Plaintiff for any services," nor did he sign "a bill of lading or contract what so ever [sic] as Shipper or Consignee." (Def.'s Mem. in Opp'n to Summ. J. ¶¶ 1-4.)

5

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment pursuant to Rule 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.,* 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co.,* 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.,* 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson,* 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.,* 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and cannot rely on the allegations in his or her pleadings, on conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange,* 84 F.3d 511, 518

(2d Cir. 1996) (citations omitted). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir. 1994).

The district court, in considering a summary judgment motion, must also be mindful of the underlying burdens of proof because "the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester,* 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, "the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the" non-movant's claim. *Id.* at 210–11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to present sufficient evidence in support of his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Id.* at 211 (citing *Matsushita,* 475 U.S. at 587).

## II. *Defendant's Liability for Tariff Charges*

Here, as in *Banton v. Scroeder Moving Sys., Inc., et al*, "[t]he situation is a fairly common one in which an employer agrees to pay the moving costs of an employee." 827 F. Supp. 1388, 1390 (E. D. Wis. 1992). The question that arises here, as in that case, is whether the defendant is liable for freight charges once his employer, who went bankrupt, failed to pay the freight charges.

"It is well established that once a common carrier's tariff is approved by and filed with the appropriate regulatory agency, that tariff binds both the common carrier and the shipper. The shipper must pay – and the common carrier must collect – neither more nor less than the filed

tariff." *United Van Lines, Inc. v. Homburger*, 932 F. Supp. 139, 142 (W. D. N. C. 1996); *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 126, 110 S. Ct. 2759, 2756, 111 L. Ed. 2d 94 (1990) ("[t]he legal rights of shipper as against carrier in respect to a rate are measured by the published tariff. Unless and until suspended or set aside, this rate is made for all purposes, the legal rate, as between carrier and shipper.") (quoting *Keogh v. Chicago & Northwestern R. Co.*, 260 U.S. 156, 163, 43 S. Ct. 47, 49, 67 L. Ed. 183 (1922)). Moreover, "it is well established that a shipper is chargeable with knowledge of a carrier's tariff provisions that are properly filed with the [ICC]." *White v. United Van Lines*, 758 F. Supp. 1240, 1242 (N. D. Ill. 1991); *State Farm Fire And Casualty Company v. United Van Lines*, 825 F. Supp. 896, 899 (N. D. Cal. 1993) (holding that "unsophisticated shipper of household goods" was bound by tariff provisions because "consignors, carriers, and consignees are all presumed to know the existence, effect and applicability of tariff provisions") (quoting *Joseph Harrah v. Minn. Mining and Manufacturing Co.*, 809 F. Supp. 313, 317 (D. N. J. 1992). Furthermore:

> [t]he only defense which can be raised to a carrier's suit for these legal charges is that the services have been paid for, that the services were not rendered, that the services were charged under an inapplicable tariff schedule, or that the rates were unreasonable.

*In re Penn Central Trans. Co.*, 477 F.2d 841, 844 (3d Cir. 1973), *affirmed*, 414 U.S. 885, 94 S. Ct. 231, 38 L. Ed. 2d 137 (1973).

Here, it is undisputed that United Van properly filed the tariffs incorporated in the Bill of Lading applicable to United Van's shipment of Adair's household goods and that Adair was listed on the Bill of Lading as the shipper. Moreover, he has not raised any of the appropriate defenses identified above. *See Penn Central*, 477 F.2d at 844. Therefore, he is liable for the tariff charges regardless of any agreement between Crye-Lieke and AHM that AHM would pay the moving charges. *See Homburger*, 932 F. Supp. at 142 (holding that "[t]he fact that

8

[employee] may have had an agreement with a third party (his employer) as to who would pay all or part of the [moving] charge[s] is legally irrelevant"); *United Van Lines v. Henry*, 40 F. Supp. 2d 1102, 1103 (E. D. Mo. 1998); *Banton*, 827 F. Supp. at 1390.

Additionally, the bill of lading, signed by Mr. Adair upon acknowledgment of the delivery, clearly lists Mr. Adair as the shipper and consignee and states that both the shipper and consignee are liable for the tariff charges even where a third party fails to pay. (*See* Bill of Lading, Pl.'s Ex. 5, Contract Terms and Conditions, Section 3; Pl.'s R. 56.1 Stmt. ¶ 16.) The Court rejects Mr. Adair's contention that he is not liable because he did not sign the Bill of Lading as shipper or consignee because he has not provided any evidence supporting this assertion as required by Rule 56(c)(1). ("A party asserting that a fact . . . is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations . . . .") Although Adair states in his opposition papers that he did not sign the Bill of Lading, he has not submitted an affidavit or any other evidence provided in Rule 56(c)(1) supporting this assertion. On the other hand, plaintiff, has provided an affidavit from Dennis Fickinger, the Director of Credit and Collections for United Van, supporting its claim that Mr. Adair "acknowledged the delivery [of his goods] by countersigning the Bill of Lading" when the goods were delivered to him on August 2, 2007. (Pl.'s Mem. in Supp. at 4; s*ee* Fickinger Affidavit ¶ 4 ("United's Bill of Lading and the signatures thereon indicate that the United driver completed the household goods shipment delivery to Adair, who acknowledged the delivery, on August 2, 2007.").) Given that defendant has not provided any evidence to the contrary, the Court will not construe the dispute in his favor.

### III. *Prejudgment Interest*

The Court will allow United Van to recover pre-judgment interest. "To allow the [carrier] to recover without awarding prejudgment interest would be to diminish the tariff charge by an amount representing the value of the use of the money owed for the period prior to judgment." *Homburger*, 932 F. Supp. at 143 (internal citations and quotation marks omitted); *see also Delta Traffic Service, Inc. v. Appco Paper & Plastics Corp.*, 931 F.2d 5, 7 (2d Cir. 1991). Accordingly, prejudgment interest shall accrue from July 26, 2007, the date of issue of the Bill of Lading, i.e., "the date the bill[] became due and owing," to May 1, 2009.[1] *Homburger*, 932 F. Supp. at 143. Interest shall be calculated at the federal post-judgment interest rate as prescribed by 28 U.S.C § 1961, as the statutory rate for post-judgment interest is appropriate for prejudgment interest. *See Homburger*, 932 F. Supp. at 143 ("The Court has the discretion to determine the rate of prejudgment interest and will use the . . . post-judgment interest rate.") (citation omitted); *Henry*, 40 F. Supp.2d at 1104. Plaintiff states and defendant does not contest this rate to be 4.91% per annum resulting in "a total pre-judgment interest allowance in the amount of $815.08 and for a total judgment against defendant Adair in the amount of $10,209.17." (*See* Plaintiff's Mem. in Supp. at 11.)

### CONCLUSION

Plaintiff has established that defendant is liable as a matter of law for tariff charges associated with plaintiff's move in the amount of $9,394.09 in addition to prejudgment interest in the amount of $815.08, for a total judgment in the amount of $10,209.17.

---

[1] Normally prejudgment interest would accrue until the date judgment is entered. It is unclear why plaintiff chooses May 9, 2009 as the cutoff date for prejudgment interest, but the Court sees no reason to extend the calculation of prejudgment interest beyond the date by which plaintiff requests it should expire.

10

Furthermore, plaintiff is entitled to judgment against defendant Pineda. On November 18, 2009, the Court adopted the March 10, 2009 Report and Recommendation of Judge Lindsay awarding plaintiff $14,124.41 in damages against defendant Ricardo Pineda, but deferred judgment until the claims against Adair were resolved.[2] (*See* Order dated Nov. 18, 2009, Docket No. 63; Report and Recommendation dated Mar. 10, 2009, Docket No. 44.) Having resolved the claims against Adair, the clerk of the Court is directed to enter judgment against both Adair and Pineda as set forth above and to close this case.

Counsel for United Van is directed to serve a copy of this Order on defendant Adair and file proof of service on ECF.

**SO ORDERED.**

Dated: Central Islip, New York
October 29, 2013

/s/

Denis R. Hurley
United States District Judge

---

[2] Plaintiff subsequently filed a letter requesting that the Court enter "final judgment against defendant Pineda" prior to deciding the claims against Adair. (*See* letter dated May 14, 2010, Docket No. 66.) That request is now moot.